UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDUARDO FERNANDEZ ROMANELLI<br><br>**Plaintiff**<br><br>vs.<br><br>VICENTE SAAVEDRA IRIZARRY;<br>Corporations A, B & C; William Doe and Mary Doe<br><br>**Defendants** | Civil Case Number: 24-_____ (____)<br><br>Breach of Contract, Damages; Collection of Monies and Unjust Enrichment and Collection of Monies<br><br>Jury Trial is Demanded. |

**COMPLAINT**

**TO THE HONORABLE COURT**:

**COMES NOW** the Plaintiff, Eduardo Fernández Romanelli, through the undersigned attorneys, and very respectfully states, alleges, and prays as follows:

### I.   INTRODUCTION

This is a civil action in which the Plaintiff, Eduardo Fernñndez Romanelli, claims damages for breach of contract, collection of monies and unjust enrichment from defendant, Vicente Saavedra Irizarry, for his non-performance of obligations and material breach of a contract between the parties, and his unjust enrichment.

### II.   JURISDICTION AND VENUE

**1.**   *Jurisdiction:* This Honorable Court has jurisdiction over the present action pursuant to 28 U.S.C. 1332 over state law claims under sections of the Puerto Rico Civil Code and other applicable statutes, and equity. Total diversity of citizenship exists between plaintiff and defendant as they are citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

2. <u>Venue</u>: Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this claim occurred in this district.

### III. THE PARTIES

3. Plaintiff, Eduardo Fernández Romanelli ("Mr. Fernández"), is, of legal age, single, a businessman, music producer, a citizen of the United States of America citizen and a resident of San Juan, Puerto Rico.

4. Defendant, Vicente Saavedra Irizarry, ("Mr. Saavedra") is upon information, knowledge and belief, of legal age, single, a businessman, a citizen of the United States of America and a resident of Miami, Florida.

5. Co-Defendants, Companies A, B & C, are corporations that may be responsible to Plaintiff for the facts alleged in the present Complaint, but at this moment their names and addresses are unknown.

6. Co-Defendants, William Doe and Mary Doe, are unknown individuals who are or might be responsible to the Plaintiff for the facts alleged in the present Complaint, but at this moment their names and addresses are unknown.

### IV. FACTS

7. Mr. Fernández is a resident of Puerto Rico and businessperson, who is involved in various business ventures such as being musical artist manager, operating a restaurant at the placita of San Juan known as *"De la Vida"*, bars and Food & Beverage concessions at music festivals and concerts.

8. On or about, the year 2000, Mr. Fernández met Mr. Saavedra, another artist manager and radio promoter, while working in the entertainment industry in Puerto Rico, and they soon became close friends.

9. They worked together on one of Mr. Fernández's musical production projects titled "*Fussion Musik*" as Mr. Saavedra helped in the production of the project by dealing with artists at recording studios and live engagements in Puerto Rico.

10. The friendship developed to the point where in about the year 2009 Mr. Fernández became the godfather to Mr. Saavedra's first daughter.

11. Then, on or about 2012 the two worked together on the musical project of the artist known as "*De La Ghetto,*" and their friendship grew stronger.

12. Through the years they remained friends and continued to work together and on their own independent projects.

13. However, on or about the year 2016-2017, Mr. Saavedra, who was working at the time as manager of a musical artist Jan Carlos Ozuna, known as "*Ozuna*", invited Mr. Fernández to accompany him to assist him with various of *Ozunas* international musical shows/concerts.

14. After accompanying him to *Ozuna* events, on or about March 2017 Mr. Saavedra, asked Mr. Fernández to help him get organized so he could manage *Ozuna's* career more effectively, and Mr. Fernández accepted.

15. Mr. Fernández began to work and organize Mr. Saavedra's business matters so *"Ozuna's"* affairs could work more productively.

16. Organizing Mr. Saavedra's undertakings was consuming more than fifty percent (50%) of Mr. Fernández's time, so Mr. Fernández informed Mr. Saavedra that he would have to spend more of his time on his businesses.

17. Instead, by August 2017, when *Ozuna* was about to publish and distribute his first album titled *"Odisea,"* Mr. Fernández was spending 100% of his time on Mr. Saavedra's *Ozuna* related affairs, which was causing him to abandon his obligations to his business and family.

18. These time-consuming activities prompted Mr. Fernández to approach Mr. Saavedra, on or about August 2017, to discuss the matter of compensation for his work and ask for an assistant.

19. Mr. Saavedra responded that he could not pay him a percentage of *Ozuna's* career but agreed to pay him (i) an annual salary of three hundred thousand dollars ($300,000); (ii) plus all related travel expenses; (iii) fifty percent (50%) of all income derived from any new artists signed by Mr. Saavedra and any new business deals from his company, and (iv) any monies recovered from any audit conducted on *Elite Media Marketing.*

20. Mr. Fernández accepted the terms offered by Mr. Saavedra.

21. Mr. Saavedra also told Mr. Fernández that Mr. Jose Cruz, (his accountant), would pay Mr. Fernández these monies as soon as Sony Music paid the advance monies from *Ozuna's* recently negotiated record deal.

22. Mr. Fernández and Mr. Saavedra shook hands to that effect, hereby ratifying their agreement.

23. As a result, on September 20, 2017, Mr. Fernández, at Mr. Saavedra's request, moved and relocated with this girlfriend to Miami, Florida, at his own expense (apartment, automobile, meals, airfare) to deal with Mr. Saavedra's affairs.

24. Among the obligations Mr. Fernández had directly related to Mr. Saavedra's affairs were to:

**(i)** procure office space;

**(ii)** hire employees [Mr. Fernández hired the following:] : *Oscar Ortiz* (accountant); *Francisco Guzman* (Label Manager); *Audicio Robles* (marketing & video campaigns); *Gabriel de Jesus* (Finances/Trusts); and *Jose Gabriel Diaz* (Finance Act-20/22 benefits);

**(iii)** Audit of *Elite Media Marketing which was Ozuna's* booking agency;

    **(iv)** Create a Trust for each of Mr. Saavedra's three daughters and deposit $250k in each;

    **(v)** Procure Act 20/22 Benefits for Mr. Saavedra's corporation named *"VP Publishing"*;

    **(vi)** Procure the filing of Mr. Saavedra's Tax Returns;

    **(vii)** Hiring of Tax attorney Edgar Rios and provide him with all relevant documentation for the compliance of benefits;

    **(viii)** Become a member of the "Finance Committees" of Mr. Saavedra's companies;

    **(ix)** Accompany Mr. Saavedra and *"Ozuna"* to attend and act as a negotiator and translator at meetings with personnel from *Sony, Spotify, YouTube, booking agencies; merchandising entities, recording studios, public relation agencies, etc.;*

    **(x)** Act as a personal assistant to Mr. Saavedra to handle Mr. Saavedra's personal affairs (contact business partners, pay monthly obligations, pay his alimony, follow up on issues, etc.);

    **(xi)** Help develop new artists signed to Mr. Saavedra's label;

    **(xii)** Engage attorneys;

    **(xiii)** be a personal assistant and confidante; and

    **(xiv)** other related activities.

25. Mr. Fernández devoted up to 15 hours a day for the period from August 2017 through December 2019 for Mr. Saavedra.

26. Mr. Saavedra reimbursed some of Mr. Fernández's expenses, but Mr. Saavedra never paid Mr. Fernández compensation for the services he rendered to Mr. Saavedra as Mr. Saavedra had agreed.

27. Mr. Fernández, performed his part and relied on the agreement between the parties, and defendant, Mr. Saavedra did not, as he did not pay the agreed to sums of the form of an (i)

annual salary of three hundred thousand dollars ($300,000); (ii) all related travel expenses; (iii) fifty percent (50%) of all income derived from any new artists signed by Mr. Saavedra and any new business deals from him his company, and (iv) any monies recovered from any audit conducted on *Elite Media Marketing*, in clear breach of the agreement.

28. As a result of the aforementioned actions: material breaches of contract and unjust enrichment by Defendant, Mr. Fernández, suffered severe damages, in the form of loss of monies, royalties, shares, profits, benefits, and loss of credibility in the industry, mental anguish and suffering and unjust enrichment which are which are estimated at an amount not less of three million dollars ($3,000,000).

## V. CAUSES OF ACTION

### A. Breach of Contract

29. All preceding paragraphs are hereby incorporated by reference.

30. Defendant, Vicente Saavedra Irizarry, intentional, purposeful and negligent non-performance of the valid contract with Plaintiff, Eduardo Fernández Romanelli constitutes a material breach of the agreement between the parties.

31. By not performing his contractual obligations in the form of paying (i) an annual salary of three hundred thousand dollars ($300,000); (ii) all related travel expenses; (iii) fifty percent (50%) of all income derived from any new artists signed by Mr. Saavedra and any new business deals from him his company, and **(iv)** any monies recovered from any audit conducted on *Elite Media Marketing*, in clear breach of the contract, Defendant, Vicente Saavedra Irizarry, materially breached the contract with Eduardo Fernández Romanelli.

32. As a direct and proximate result of Defendant's material breaches, Mr. Fernández Romanelli, has suffered damages in the form of reasonable expenses and costs in reliance of defendant's performance of the contract, plus the loss of monies, royalties, shares, profits, benefits,

6

and loss of credibility in the industry which are estimated at an amount not less than one million dollars ($1,000,000.00).

33. Furthermore, as a direct and proximate result of Defendant's material breaches, Mr. Fernández has suffered damages in the form of severe anguish and mental suffering for having been humiliated and invested valuable time, monies, abandonment of his business affairs, resources, credibility, access to relationships in the business industry and loss of business opportunities without any compensation as agreed which are estimated at an amount not less than two million dollars ($2,000,000.00).

      **B.**    **Collection of Monies**

34. All preceding paragraphs are hereby incorporated by reference.

35. Mr. Saavedra is indebted to Mr. Fernández for monies owed, promised and consumed which are estimated at no less than one million dollars.

39. However, despite that the amounts of monies owed by Mr. Saavedra to Mr. Fernández, which are liquid, payable and enforceable, the defendant has not paid it.

40. The debt of no less of one million dollars is owed and payable on demand, hence, Fernández, has a right to collect monies which are owed by Mr. Saavedra.

      **C.**    **Unjust Enrichment**

41. All preceding paragraphs are hereby incorporated by reference.

42. In the alternative, Mr. Saavedra, through his actions unjustly enriched himself at Mr. Fernández's expense and should be required to make restitution of and/or for the benefits he received unjustly.

43. Furthermore, through and with knowledge of his actions Mr. Saavedra's patrimony increased substantially while Fernández's decreased.

44. Hence Mr. Fernández requests an amount not less than one million dollars ($1,000,000) for unjust enrichment.

## VI. JURY DEMAND

**57.** Plaintiff, Eduardo Fernández Romanelli, very respectfully requests a jury trial.

## VII. PRAYER

**WHEREFORE**, Plaintiff, Eduardo FernÑndez Romanelli respectfully requests that this Honorable Court, for the above stated reasons, enter for judgment against defendant, Vicente Saavedra Irizarry for the following:

a) A monetary amount of not less than one million dollars ($1,000,000) for damages resulting from Defendant, breach and non- performance of the agreement with Plaintiff;

b) A monetary amount of not less than two million dollars ($2,000,000) for damages resulting from the harm to reputation, severe anguish and mental suffering of Plaintiff;

c) a monetary amount of not less than ($1,000,000) from defendant for collection of money;

d) In the alternative, a monetary amount of not less than ($1,000,000) from defendant for his unjust enrichment, and plaintiff's corresponding impoverishment

e) prejudgment and post judgment interest, costs of suit, attorneys' fees; and

f) all other relief this Honorable Court deems proper.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico on July 25, 2024.

### CERTIFICATE OF SERVICE

We hereby inform that on this date, we have uploaded and filed this document on to the CM/ECF system as required and for notice of all the parties.

*s/Jane Becker Whitaker/*
**JANE BECKER WHITAKER**
U.S.D.C. No. 205110

PO Box 9023914
San Juan, PR 00902-3914
Tel. (787) 585-3824 / E-mail: jbw@beckervissepo.com
janebeckerwhitaker@gmail.com

*s/Jean Paul Vissepó Garriga/*
**JEAN PAUL VISSEPÓ GARRIGA**
U.S.D.C. No. 221504

PO Box 367116
San Juan, PR 00936-7116
Tel. (787) 633-9601 / E-mail: jp@vissepolaw.com